JUDGE KAPLAN



MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
 FERMIN LOPEZ, CESAR MELO AND
ARMANDO AJTUN, *individually and on*
*behalf of others similarly situated,*

                                        *Plaintiffs,*

              -against-

NIGHTS OF CABIRIA LLC (D/B/A TWO
BOOTS PIZZA), TWO BOOTS
MANAGEMENT COMPANY LLC(D/B/A
TWO BOOTS PIZZA), PHIL HARTMAN,
DORIS KORNISH AND ROBERT PERL,

                                        *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

          Plaintiffs Fermin Lopez, Cesar Melo and Armando Ajtun, individually and on behalf of

others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael

Faillace & Associates, P.C., upon their knowledge and belief, and as against Nights of Cabiria

LLC (d/b/a Two Boots Pizza), Two Boots Management Company LLC (d/b/a Two Boots Pizza)

("Defendant Corporations"), Phil Hartman, Doris Kornish and Robert Perl, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are present and former employees of defendants Nights of Cabiria LLC. (d/b/a Two Boots Pizza), Two Boots Management Company LLC (d/b/a Two Boots Pizza), Phil Hartman, Doris Kornish and Robert Perl (collectively, "Defendants").

2.      Defendants own, operate, or control a pizzeria/restaurant located at 42 Avenue A, New York, New York, 10009, under the name Two Boots Pizza.

3.      Upon information and belief, individual defendants Phil Hartman, Doris Kornish and Robert Perl serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as joint or unified enterprises.

4.      Plaintiffs were primarily employed as delivery workers, but they were required to spend a considerable part of their work day performing Non-tipped, Non-delivery Duties, including but not limited to, various restaurant duties such as preparing salads, sweeping and mopping the basement and the area around the counter, scraping parmesan cheese, bringing up food and any other items needed by the kitchen staff, taking out the garbage, cleaning the basement after stocking every delivery, cleaning the bathrooms, windows and the sidewalk, bringing up sodas and placing them in the refrigerator, ripping apart cardboard boxes and tying them up, carrying down and stocking deliveries in the basement, washing pizza trays and placing them on the car for use the next day, bringing in and taking out the bicycles, cleaning tables and sweeping and mopping the entire place after closing, washing bathrooms at night and in the morning, bringing down the security doors after closing and going shopping to a Chinese store on Houston Street (hereafter the "Non-tipped, Non-delivery Duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay or for any additional overtime premium. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

6.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties required greater or equal time spent in non-tipped, non-delivery duties.

7.      Regardless, at all times Defendants paid Plaintiffs at the tip-credit rate.

8.      Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever was less in each day. 12 N.Y. C.R.R. §146.

9.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs the lower tip-credited rate.

10.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

11.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

- 3 -

12.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-2.4(a) (2009) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

13.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

15.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a pizzeria/restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

16.     Plaintiff Fermin Lopez ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in New York County, New York. Plaintiff Lopez" was employed by Defendants from approximately June 2013 until on or about January 18, 2014.

17.     During the course of his employment, Plaintiff Lopez worked at Defendants' Two Boots Pizza Avenue A location.

18.     Plaintiff Cesar Melo ("Plaintiff Melo" or "Mr. Melo") is an adult individual residing in Bronx County, New York. Plaintiff Melo was employed by Defendants from approximately May 2013 until on or about July 2013.

19.     During the course of his employment, Plaintiff Melo worked at Defendants' Two Boots Pizza Avenue A location.

20.     Plaintiff Armando Ajtun ("Plaintiff Armando" or "Mr. Armando") is an adult individual residing in Bronx County, New York. Plaintiff Armando was employed by Defendants from approximately November 2012 until on or about November 2013.

21.     During the course of his employment, Plaintiff Armando worked at Defendants' Two Boots Pizza Avenue A location.

### *Defendants*

22.     At all relevant times, Defendants owned, operated, or controlled a pizzeria/restaurant which is located at 42 Avenue A, New York, New York, 10009, under the name "Two Boots Pizza".

23.     Upon information and belief, Nights of Cabiria LLC is a domestic corporation organized and existing under the laws of the State of New York.

- 5 -

24. Upon information and belief, Nights of Cabiria LLC maintains a principal place of business at 42 Avenue A, New York, New York 10009, and its service of process address at 59 Silver Hollow Rd., Willow, New York 12495.

25. Upon information and belief, Two Boots Management Company LLC is a domestic corporation organized and existing under the laws of the State of New York.

26. Upon information and belief, Two Boots Management Company LLC maintains a principal place of business at 42 Avenue A, New York, New York 10009, and its service of process address at 59 Silver Hollow Rd., Willow, New York 12495.

27. Defendant Phil Hartman is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Phil Hartman is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Phil Hartman possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28. Defendant Doris Kornish is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Doris Kornish is sued individually in her capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Doris Kornish possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. She determined the wages and compensation of the employees of Defendants,

- 6 -

including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

29.     Defendant Robert Perl is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Robert Perl is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation. Defendant Robert Perl possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## Factual allegations

### *Defendants Constitute Joint Employers*

30.     Defendants operate a pizzeria/restaurant located on the East Village section of Manhattan.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

- 7 -

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, individual defendants Phil Hartman, Doris Kornish and Robert Perl operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations,

    b.  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.  transferring assets and debts freely as between all Defendants,

    d.  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e.  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations,

    f.  intermingling assets and debts of their own with Defendant Corporation,

    g.  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h.  other actions evincing a failure to adhere to the corporate form.

36.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.     In each year from 2008 to the present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

### Individual Plaintiffs

39.     The Plaintiffs are former employees of the Defendants who were primarily employed as delivery workers. However, they spent a considerable amount of time performing the Non-tipped, Non-delivery Duties described above.

40.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Fermin Lopez

42.     Plaintiff Lopez was employed by Defendants from approximately June 2013 until January 18, 2014.

43.     Defendants ostensibly employed Plaintiff Lopez as a delivery worker.

44.     However, Plaintiff Lopez also was required to spend a significant portion of his work day performing the Non-tipped, Non-delivery Duties described above.

45.     Although Plaintiff Lopez ostensibly was employed as a delivery worker, he spent over four hours of each day performing non-delivery work.

46.     Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47.     Plaintiff Lopez's work duties required neither discretion nor independent judgment.

48.     Throughout his employment with Defendants, Plaintiff Lopez regularly worked in excess of 40 hours per week

49.     From approximately June 2013 until on or about October 2013, Plaintiff Lopez worked from approximately 11:30 a.m. until on or about 1:00 a.m. on Mondays, from approximately 5:00 p.m. until on or about 1:00 a.m. on Tuesdays and Wednesdays, from approximately 6:00 p.m. until on or about 3:00 a.m. on Saturdays and from approximately 4:00 p.m. until on or about 1:00 a.m. on Sundays. In addition, at least twice a week he had to come in at 11:00 a.m. to cover for fellow delivery workers (typically 47.5 to 69.5 hours per week).

50.     During the months of September and October 2013, defendants required Plaintiff Lopez to come in from 4:30 p.m. to 9:00 p.m. every other Thursday (typically 52 to 74 hours per week).

51.     From approximately September 2013 until January 18, 2014, Plaintiff Lopez worked from approximately 11:30 a.m. until on or about 6:00 p.m. on Mondays, from approximately 4:00 p.m. until on or about 1:00 a.m. on Tuesdays and Wednesday, from 6:00 p.m. until on or about 3:00 a.m. on Saturdays and from 4:00 p.m. to 1:00 a.m. on Sundays; in addition, on repeated occasions he had to work from 11:30 a.m. to 1:00 a.m. to cover for missing fellow delivery workers (typically 40.5 to 54.5 hours per week).

52.     Defendants constantly changed Plaintiff Lopez's work schedule.

53.     Throughout his employment with defendants, Plaintiff Lopez was paid his wages by check.

54.     From approximately June 2013 until January 2014, Plaintiff Lopez was paid $5.65 per hour for the hours worked under 40 per week and $9.25 per hour for some of the overtime hours he worked each week.

55.     Defendants did not pay Plaintiff Lopez for the hours he had to work to cover for a fellow delivery worker.

56.     In fact, Defendants required Plaintiff Lopez to use the missing delivery worker's time card to punch in and out when he came in to cover for that individual.

57.     For example, Defendants required Plaintiff Lopez to come in at 11:30 a.m. on days in which he was scheduled to start at 5:00 or 6:00 p.m. and did not pay him for the additional hours he worked.

58.      Defendants never granted Plaintiff Lopez any break or meal period of any kind.

59.     Plaintiff Lopez was never notified by Defendants that his tips were being included as an offset for wages.

60.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lopez's wages.

61.     In addition, Defendant required Plaintiff Lopez to turn in all his tip tickets at the end of each shift and would only pay him the tips at the end of the week without allowing him to determine whether he had been paid all the tips he had earned.

62.     No notifications, either in the form of posted notices or other means, were ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

- 11 -

63.     Plaintiff Lopez was required to keep track of his time; however, defendants repeatedly required Plaintiff Lopez to work without punching in and out with his time card.

64.     Furthermore, Defendants did not provide Plaintiff Lopez with a statement of wages with each payment of wages, as required by NYLL 195(3).

65.     Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

66.     Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds—including one bike for $150 and a basket for $30. Thus, the total cost of the "tools of the trade" Plaintiff Lopez was required to purchase as a deliveryman was approximately $180.00.

### *Plaintiff Cesar Melo*

67.     Plaintiff Melo was employed by Defendants from approximately May 2013 until on or about July 2013.

68.     Defendants ostensibly employed Plaintiff Melo as a delivery worker.

69.     However, Plaintiff Melo also was required to spend a significant portion of his work day performing the Non-tipped, Non-delivery Duties described above.

70.     Although Plaintiff Melo ostensibly was employed as a delivery worker, he spent over four hours of each day performing non-delivery work.

71.     Plaintiff Melo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

72.     Plaintiff Melo's work duties required neither discretion nor independent judgment.

73.     Throughout his employment with Defendants, Plaintiff Melo regularly worked in excess of 40 hours per week.

74.     From approximately May 2013 until on or about July 2013, Plaintiff Melo worked different schedules six days a week.

75.      Throughout his employment with defendants, Plaintiff Melo was paid by check.

76.     From approximately May 2013 until on or about July 2013, Plaintiff Melo was paid $5.65 per hour for the hours worked under 40 per week and $9.25 per hour for some of the overtime hours he worked each week.

77.     Defendants did not pay Plaintiff Melo for the hours he had to work to cover for a fellow delivery worker.

78.     In fact, Defendants required Plaintiff Melo to use the missing delivery worker's time card to punch in and out when he came in to cover for that individual.

79.     For example, Defendants required Plaintiff Melo to come in at 11:30 a.m. on days in which he was scheduled to start at 5:00 or 6:00 p.m.and did not pay him for the additional hours he worked.

80.     Defendants never granted Plaintiff Melo any break or meal period of any kind.

81.     Plaintiff Melo was never notified by Defendants that his tips are being included as an offset for wages.

82.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Melo's wages.

83.     In addition, Defendant required Plaintiff Melo to turn in all his tip tickets at the end of each shift and would only pay him the tips at the end of the week without allowing him to determine whether he had been paid all the tips he had earned.

84.     No notifications, either in the form of posted notices or other means, were ever given to Plaintiff Melo regarding overtime and wages under the FLSA and NYLL.

85.     Plaintiff Melo was required to keep track of his time; however, defendants repeatedly required Plaintiff Melo to work without punching in and out with his time card.

86.     Furthermore, Defendants did not provide Plaintiff Melo with a statement of wages with each payment of wages, as required by NYLL 195(3).

87.     Defendants did not give any notice to Plaintiff Melo, in English and in Spanish (Plaintiff Melo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Armando Ajtun*

88.     Plaintiff Armando was employed by Defendants from approximately November 2012 until on or about November 2013.

89.     Defendants ostensibly employed Plaintiff Armando as a delivery worker.

90.     However, Plaintiff Armando also was required to spend a significant portion of his work day performing the Non-tipped, Non-delivery Duties described above.

91.     Although Plaintiff Armando ostensibly was employed as a delivery worker, he spent over four hours of each day performing non-delivery work throughout his employment with Defendants.

92.     Plaintiff Armando regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

93.     Plaintiff Armando's work duties required neither discretion nor independent judgment.

- 14 -

94.     From approximately November 2012 until on or about November 2013, Plaintiff Armando worked from approximately 6:00 p.m. until on or about 1:00 a.m. Mondays and Thursdays, from approximately 5:00 p.m. until on or about 1:00 a.m. on Tuesdays, from approximately 5:30 p.m. until on or about 1:00 a.m. on Wednesdays and from approximately 6:00 p.m. until on or about 3:00 a.m. on Fridays and Saturdays; in addition, twice a week he was required to come in at 11:00 a.m. to cover for a missing fellow delivery worker (typically 48 to 60 hours per week).

95.     Throughout his employment with defendants, Plaintiff Armando was paid his wages by check.

96.     From approximately November 2012 until on or about November 2013, Plaintiff Armando was paid $5.65 per hour for the hours worked under 40 per week and $9.25 per hour for some of the overtime hours he worked each week.

97.     Defendants did not pay Plaintiff Armando for the hours he had to work to cover for a fellow delivery worker.

98.     In fact, Defendants required Plaintiff Armando to use the missing delivery worker's time card to punch in and out when he came in to cover for that individual.

99.     For example, Defendants required Plaintiff Armando to come in at 11:00 a.m. on days in which he was scheduled to start at 5:00 or 6:00 p.m. and did not pay him for the additional hours he worked.

100.    Defendants never granted Plaintiff Armando any break or meal period of any kind.

101.    Plaintiff Armando was never notified by Defendants that his tips were being included as an offset for wages.

- 15 -

102.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Armando's wages.

103.     In addition, Defendants required Plaintiff Armando to turn in all his tip tickets at the end of each shift and would only pay him the tips at the end of the week without allowing him to determine whether he had been paid all the tips he had earned.

104.     No notifications, either in the form of posted notices or other means, were ever given to Plaintiff Armando regarding overtime and wages under the FLSA and NYLL.

105.     Plaintiff Armando was required to keep track of his time; however, defendants repeatedly required Plaintiff Armando to work without punching in and out with his time card.

106.     Furthermore, Defendants did not provide Plaintiff Armando with a statement of wages with each payment of wages, as required by NYLL 195(3).

107.     Defendants did not give any notice to Plaintiff Armando, in English and in Spanish (Plaintiff Armando's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

108.     Defendants required Plaintiff Armando to purchase "tools of the trade" with his own funds—including one bicycle for $400 and three sets of lights for the bicycle for $20 each. Thus, the total cost of the "tools of the trade" Plaintiff Armando was required to purchase as a deliveryman was approximately $510.

*Defendants' General Employment Practices*

109.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

- 16 -

110.   Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

111.   Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

112.   At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

113.   Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

114.   Defendants required Plaintiffs to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers.

115.   Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

116.   These Plaintiffs were paid at the lowered tip-credited rate by Defendants. However, under State Law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y. C.R.R. § 146.

117.   New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

118.   Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties including the Non-tipped, Non-Delivery Duties described herein.

119.   In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

120.   Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

121.   Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

122.   Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

123.   Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

124.   Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

125.   Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

- 18 -

126.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

127.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

128.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

129.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

130.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

131.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

132.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half times their regular rates for work in excess of forty (40) hours per work week.

133.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

134.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

135.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

136.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

137.   At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

138.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

139.   In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs at the applicable minimum hourly rate.

140.   Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

141.   Plaintiffs have been damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

142.   Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

143.   Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

144.   Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

145.   Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

146.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

147.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

148.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

149.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

150.    Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW)

151.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

152.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

153.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

154.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

155.    Plaintiffs have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER
### OF THE NEW YORK COMMISSIONER OF LABOR)

156.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-2.4(a) (2009).

158.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

159.    Plaintiffs have been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING
### REQUIREMENTS OF THE NEW YORK LABOR LAW)

160.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as"

- 23 -

names used by the employer; the physical address of the employer's main office or principal

place of business, and a mailing address if different; and the telephone number of the employer,

as required by NYLL §195(1).

162.   Defendants are liable to each Plaintiff in the amount of $2,500, together with

costs and attorneys fees.

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW)

163.   Plaintiffs repeat and re-allege all paragraphs above as though set forth fully

herein.

164.   With each payment of wages, Defendants failed to provide Plaintiffs with a

statement listing each the following: the dates of work covered by that payment of wages; name

of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages;

the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular

hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

165.   Defendants are liable to each Plaintiff in the amount of $2,500, together with

costs and attorneys fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

Defendants by:

- 24 -

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that the Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 26, 2014

                                        MICHAEL FAILLACE & ASSOCIATES, P.C.

                        By:     _____
                                Michael Faillace [MF-8436]
                                MICHAEL FAILLACE & ASSOCIATES, P.C.
                                60 East 42nd Street, Suite 2020
                                New York, New York 10165
                                Telephone: (212) 317-1200
                                Facsimile: (212) 317-1620